Appellant, James Charles Bishop, was indicted by the July 1981 term of the Tuscaloosa County Grand Jury for the attempted murder of Stanley Lockhart, in violation of § 13A-4-2, Code of Alabama 1975. On February 8, 1982, a jury trial was held and appellant was subsequently found guilty as charged in the indictment. The trial court sentenced appellant on April 15, 1982. The trial court determined that appellant was a habitual offender, with ten prior felony convictions, and sentenced him to life imprisonment without parole. This appeal followed.
Mr. Stanley Lockhart, the prosecuting witness, testified that he was the terminal manager of Ross Neely Express, and had been so employed for three and one-half years. On April 21, 1981, Lockhart closed the terminal at about 5:00 p.m., and returned at about 8:00 p.m. with his wife, Martha Lockhart. According to Lockhart, about 50 gallons of gasoline had been reported missing over the prior three-day period, and he had returned to watch the terminal grounds in an attempt to determine what was happening to the gasoline.
Lockhart placed a note on one of the trucks stating, in effect, that they knew who was taking the gas and would catch them. Then Lockhart and his wife positioned themselves in another truck and waited. Shortly thereafter Lockhart observed three black males carrying plastic containers enter the well-lit terminal area. Lockhart observed that appellant was armed with a large caliber pistol, holstered around his shoulder.
The three men went to the truck with the note attached and appeared to read it. The three then moved directly toward where Lockhart and his wife were located. Mrs. Lockhart was told to get down on the floor of the truck and remain there, which she did. Appellant got within two feet of Lockhart and saw him in the truck. Upon observing Lockhart, appellant "began to run and pull his gun out of his holster at the same time." The other two men dropped their containers and ran in opposite directions. Appellant went to the rear of the truck Lockhart was sitting in and pointed the pistol toward the cab and fired. Appellant walked to the driver's side of the cab, with gun in hand, and as appellant approached, Lockhart fired four shots at appellant's feet with a small caliber pistol Lockhart had brought with him. Appellant apparently ran behind the truck and fired at the cab once again. Lockhart took cover and waited. A few moments later Lockhart ventured a view of the area, and looking from the passenger side window saw appellant pointing a pistol directly at him. Lockhart ducked as a third shot was fired, shattering the glass of the passenger windshield where Lockhart's head had been positioned a split-second before. Lockhart sustained cuts and bruises to his eyes and face as a result of the shattered glass. Lockhart stayed down and a few seconds later another shot was fired into the truck. Lockhart waited a few minutes and then he and his wife went to the terminal and called the police.
Appellant was subsequently apprehended near the area and a .357 magnum revolver was taken from his person. Authorities removed five spent shells and one that had been "snapped on," but not fired. Appellant was informed of his Miranda rights *Page 1324 
and made a statement to the police authorities at the scene.
 I
Appellant contends that the trial court erred in overruling his motion for a continuance. The record reveals that appellant was docketed to stand trial in Case No. CC81-563 (attempted murder of Martha Lockhart) on January 25, 1982. A jury was struck, but a mistrial was granted before trial began because the petit jury was placed in the jury box in the absence of appellant and his counsel. The case was continued until the next jury week. The February 8, 1982, Revised Jury Docket (published January 29, 1982) set Case No. CC81-887 (escape) for trial on February 10, 1982. On February 1, 1982, the District Attorney's Office notified appellant that Case No. CC81-562 (attempted murder of Stanley Lockhart) would be called for trial rather than the escape case.
On February 8, 1982, Case No. CC81-562 (S. Lockhart) was called for trial and appellant moved for a continuance of this case until the case on the original docket was tried, arguing that the exercise of discretion by the District Attorney in deciding which case would be tried first deprived appellant of a fair and impartial trial. The motion was denied.
Appellant has appended testimony from an unrelated case regarding similar circumstances of revised ordering of cases by the District Attorney's Office. District Attorney Charles Freeman testified that his office has control over which cases are put on the docket subject to the judge's orders otherwise. The order of cases from the pretrial docket is set by the judge's secretary. The cases are not put in numerical order, nor are they called in the order in which they are placed on the docket. Mr. Freeman stated that the District Attorney's Office and the Judge decide which cases will be called for trial. Upon examination by the court, Mr. Freeman acknowledged that his office had always "had imput into the order of cases" set for trial, and the courts had allowed that practice in Tuscaloosa County.
At the hearing, appellant presented no evidence of prejudice and on appeal he has asserted no prejudice other than the "potential for abuse." Appellant asserts that the prosecutor has sole discretion in setting the trial docket; however, we view the evidence otherwise. It appears to us from the record that the trial judge retains ultimate control and responsibility for the trial docket. "It is within the discretion of the trial court, or the prosecuting attorney,subject to the control of the court, to determine the order in which cases shall be tried." Lister v. State, 437 So.2d 622
(Ala.Crim.App. 1983) (emphasis added). See also 23 C.J.S.Criminal Law § 932 (1961). It was therefore not improper for the prosecuting attorney to have input into the positioning of cases on the criminal trial docket. As we stated in Wilson v.State, 395 So.2d 1116, 1119 (Ala.Crim.App. 1982):
 "The matter of placing cases on the docket for trial, and of granting a continuance, is largely within the discretion of the trial judge, and in the absence of a showing of an abuse of discretion by the trial court, this Court should not disturb the trial court's ruling."
We find no abuse of discretion in the trial court's ruling on appellant's motion for continuance based on the grounds asserted.
 II
Appellant contends that a statement he made while in police custody was involuntary and therefore should have been suppressed. It is argued that appellant was surrounded by a large number of police officers; that one officer, Bigham, approached the car in which appellant was being held and "tapped" a shotgun he was carrying in a threatening manner; that prior to making the statement, while handcuffed, he was grabbed under his throat to facilitate having his picture taken; and that he was told that the charges against him might be reduced to assault.
Officer Gorman Adams testified that he informed appellant of his Miranda rights *Page 1325 
and that appellant acknowledged that he understood those rights. Adams stated that no threats, coercion, rewards, or hope of reward were offered to appellant in order to obtain a statement.
Appellant was being held in a patrol car as officers investigated the scene. Adams testified that Officer Bigham was brought to where appellant was being held in order to verify appellant's identity. Bigham had a shotgun with him because he had been on "night-watch duty" at a nearby lumberyard where the regular night watchman had been shot at a few nights before. The tendency of the record establishes that Officer Bigham was present solely for the purpose of identification and departed immediately thereafter. Appellant made no statement until after Bigham departed.
Officer Gene Fondren testified that he alone took appellant's statement. Fondren was present when Adams informed appellant of his Miranda rights. Fondren verified that appellant stated he understood the Miranda rights and desired to make a statement. Fondren then attempted to take a photograph of appellant. Adams requested that appellant hold his head up, which appellant did not do, resulting in Adams placing his hand under appellant's chin and lifting appellant's face toward the camera. Appellant was then placed in the patrol car, accompanied by Fondren, and a statement was taken. This statement was taken "a minute or so" after the Miranda rights were read to appellant.
Appellant then took the stand for the limited purpose of testifying as to the voluntariness of the statement. Appellant testified that he was read the Miranda rights and he understood them. According to appellant, however, he was told that the charges might be lessened. Appellant admitted that Officer Adams asked that he raise his head in order to take a photograph and that he "slanted" his head down. Appellant further admitted that he did not talk with Officer Fondren because Officer Bigham had a shotgun, admitting that Bigham was not present when the statement was made.
The trial judge was confronted with conflicting evidence concerning the voluntariness of appellant's statement. The trial court determined that portions of appellant's statement were admissible, excluding matters that did not pertain to the charged offense. The standard we use when reviewing the trial court's decision was stated in Joshua v. State, 372 So.2d 885
(Ala.Crim.App.), cert. denied, 372 So.2d 891 (Ala. 1981):
 "Where there is a conflict in the evidence on the voluntariness of a confession, great weight must be given to the judgment of the trial judge in deciding this issue. His finding will not be disturbed on appeal unless palpably contrary to the weight of the evidence. Even where there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial judge need only be supported by substantial evidence and not to a moral certainty."
See also Lott v. State, 456 So.2d 857 (Ala.Crim.App. 1984).
Our review of the record clearly indicates that appellant understood and waived his Miranda rights. There was ample evidence upon which the trial court could have determined that appellant's statement was voluntarily given. The trial court's decision is due to be upheld.
 III
Appellant's final contention is that the trial court erred in overruling his motion to exclude the State's evidence for failure to prove the requisite intent to kill. This issue is clearly without merit. There was ample evidence to conclude that appellant was aware that Mr. Lockhart was in the truck. The evidence establishes that appellant fired at Mr. Lockhart four times after appellant realized Mr. Lockhart was watching. It appears that appellant actually stalked Mr. Lockhart in order to get a good shot at him. Had Mr. Lockhart not taken evasive action, when the third shot was fired by appellant at close range, it is *Page 1326 
reasonable to conclude, from the facts, that Mr. Lockhart would have been struck in the face or forehead by the bullet and seriously wounded or killed. As this court has previously stated:
 "Intent may be presumed from the act of using a deadly weapon, McArdle v. State, 372 So.2d 897
(Ala.Crim.App.), cert. denied, 372 So.2d 902 (Ala. 1979), and from the character of the assault, including the nature and amount of force used in the fatal injury. Flint v. State, 370 So.2d 332
(Ala.Crim.App. 1979)."
Chaney v. State, 417 So.2d 625, 627 (Ala.Crim.App. 1982). "However, this evidence must be sufficient to allow the jury to conclude, by fair inference, that the appellant was shooting at the person (named in the indictment) in particular with the intent to murder him." Free v. State, 455 So.2d 137
(Ala.Crim.App. 1984). In Underhill on Criminal Evidence, § 540 (3d ed. 1923), we find the following statement regarding proof of intent in an attempted murder charge:
 "Thus, as a general rule, the force or violence which was employed must be proven to have been intentional. . . . The intention to do great bodily harm, to murder or commit any other crime by means of an assault, may be inferred from the circumstances. Circumstantial evidence is usually the only available evidence of intention aside from the declarations of the accused. The intention may be inferred from the force or direction, or from the natural or contemplated result of the violence employed, from the weapon or implement used by the accused, from his threats or prior conduct towards the person assaulted, and generally from the extent and effect of the injury inflicted, or from any deliberate action which is naturally attempted and usually results in danger to the life of another."
A review of the facts and circumstances of the case subjudice convinces us that there was more than sufficient evidence from which the jury could infer appellant's intent; therefore, the trial court's ruling was proper.
We commend both parties for the excellent and well reasoned briefs that were submitted to this court for review.
Based on the foregoing, this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur.