BOWEN, Presiding Judge.
Joann Gassaway Hudson, the appellant, was convicted of driving under the influence of alcohol in violation of Ala.Code 1975, § 32-5A-191, was fined $300, and was sentenced to 30 days in the county jail. That sentence was suspended upon good behavior and completion of the Level One DUI Course. She was also convicted of possession of prohibited liquor in violation of § 28-4-20 and was fined $75.
On this direct appeal from those convictions, the appellant raises the single issue that the trial court committed reversible error in refusing to charge the jury as requested.
After the trial court had charged the jury and the jury had retired but before deliberation actually began, the following occurred.
*1064 “THE COURT: Any [exceptions to the oral instructions] from the defendant?
“MR. DEMPSEY [defense counsel]: I’ve got some jury charges.
“THE COURT: Let me see them. Well, you are requesting all of those charges?
“MR. DEMPSEY: Yes, sir.
“THE COURT: And I will refuse those charges.
“MR. DEMPSEY: I would like to read one on the record, specifically.
“THE COURT: Okay.
“MR. DEMPSEY: The Court charges the jury that ‘If a conviction in this case depends upon the testimony of a single witness and if the jury has a reasonable doubt as to the truthfulness of the testimony of such witness, they can not convict the defendant.’ I would ask that specifically be given.
“THE COURT: Overrule.” R. 89-90.
Here, defense counsel failed to preserve this issue for review because he did not state the grounds of his objection as required by Rule 21.2, AR.Crim.P.
“Rule 21.2, AR.Crim.P., states that before an appellant can question the denial of a requested jury instruction he must object and state the grounds of his objection. As this court recently stated in Hagood v. State, 588 So.2d 526 (Ala.Cr.App.1991), cert. denied, [—] U.S. [-], 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992):
“ ‘It is the appellant’s burden to “... advise the trial judge of his objections to the jury charge, stating his grounds, before the jury retires.” Cox v. State, 500 So.2d 1296, 1299 (Ala.Cr.App.1986). “The objection must be specific enough to point out the alleged error so as to allow the judge to correct the error.” Biddie v. State, 516 So.2d 846 (Ala.Cr.App.1987)- “The reference to ‘all of his written charges as ‘correct statements of the law’ is simply not a specific ground of objection....” Connolly v. State, 539 So.2d 436, 438 (Ala.Cr.App.1988).’
588 So.2d at 533. Thus, the appellant’s failure to give specific grounds for his objection has not preserved for appellate review the denial of his requested jury instructions.”
Moody v. State, 615 So.2d 126, 128-29 (Ala.Cr.App.1993). See also Russo v. State, 610 So.2d 1206, 1211 (Ala.Cr.App.1992). Additionally, we note that Rule 21.1, AR.Crim.P., clearly anticipates that written requested instructions shall be filed with the trial court and served on the opposing party prior to[1] the closing arguments of counsel to the jury.
Furthermore, even had proper objection been made, the refusal of this instruction would not have been cause for reversal under the circumstances presented here.
The complaint charged that the appellant “did drive or have actual physical control over a vehicle.”[2] C.R. 28. Russellville Police Officer Henry Hawkins was the only prosecution witness to testify against the appellant. He testified that around 3:00 on Thursday afternoon, November 12, 1992, he responded to a radio dispatch of a person driving under the influence. Upon his arrival at the area designated in the dispatch, he observed the described automobile sitting in the middle of the road on a city street. He testified that the automobile was parked, with the engine off, “in the middle of the road, it was parked more toward the curb, more five feet, six feet away from the curb, so it was in the middle of the road.” R. 42.
The appellant was sitting in the driver’s seat and a male individual was sitting on the passenger side of the car. Hawkins ob *1065 served an open can of beer “just in the floor board right next to her right leg.” R. 46. Hawkins never saw the appellant driving the car and testified that the appellant told him that “her brother was driving ... [and] he was in the house using the restroom.” R. 54. Hawkins testified that he arrested the appellant because “she was the one that had control and she could have just started the car and drove off without the brother in the vehicle. For all I know, she could have been telling me a lie, I didn’t know.” R. 54-55. He stated that he never saw the appellant’s brother although he “did see a subject that was peeking out the window at the residence where she said her brother had went, but he never did come out to the car.” R. 58. Hawkins also testified that he gave the appellant an Intoxylizer 5000 test which showed that the appellant had a blood-alcohol level of .169%.
The appellant testified in her own behalf and admitted that she had “had quite a bit” to drink (R. 63); that she had been drinking beer and mixed drinks all day; and that she had been drinking in her car while her brother, Glenn, and her friend, Rodney Rodgers, had been riding around. The appellant “d[i]dn’t deny” that she was “drunk.” R. 64. She admitted that she was sitting in the driver’s seat of her automobile and that she had had too much to drink to be driving an automobile. However, the appellant claimed that she was just sitting in the driver’s seat, that her brother had been driving her car, and that she had not been driving.
The appellant testified that she, Glenn, and Rodney had been to Cindy Borden’s house and that she was waiting on her brother when she was arrested. When they arrived at Ms. Borden’s house, Glenn went inside to “look for some papers, and [she] got out and went to the restroom.” R. 62. The appellant stated that when she returned to her car, she got in the driver’s seat of the two-door car to talk to Rodney, who was sitting in the front passenger’s seat.
The appellant testified that Glenn had been driving her ear because “I drive a truck and I have a CDL license. I know if I get caught with a DUI, I lose my CDL license and I can’t drive a truck, and I work — that is my work.” R. 63. The appellant stated that Glenn had one and maybe two beers. She admitted that Rodney had been drinking “[p]retty much” and that he had been drinking too much to drive. R. 65.
Tina Keller testified as a defense witness that the appellant, the appellant’s brother, and their friend, came by her house around 10:00 or 11:00 on the morning of November 12, 1992; that they stayed three or four hours; and that the appellant’s brother was driving both when they arrived and when they left. Ms. Keller testified that the appellant was intoxicated and that “before they ever went out of the house that [the appellant said] she wasn’t driving and Glenn said, ‘No, I’m driving.’” R. 70.
Cinderella Borden testified that the appellant, the appellant’s brother, and their friend visited her on November 12, 1992; that she saw Glenn drive the appellant’s automobile to her house; and that the appellant was sitting in the back seat when they arrived. Ms. Borden stated that Glenn came in her house and was looking for “[s]ome kind of title papers for the trailer” (R. 76), although she did not know how the papers got in her house: “Someway or another the paper was at my house. I don’t know how the paper got there, but he come looking for the paper at my house.” R. 76. Ms. Borden testified that Glenn was a “friend” but not a “good” or “close” friend (R. 76-77) and that he had been at her house “about one or two times, just sitting in there talking” (R. 77).
Ms. Borden testified that the appellant came inside her house and used the bathroom, then went back and sat in the driver’s seat of the ear. R. 73. Glenn stayed in the house when “the cops c[a]me,” even though he saw the handcuffs being placed on the appellant. R. 73, 78. Ms. Borden stated, “[H]e was afraid to go out there ... because he was afraid he would go to jail.” R. 74. The appellant’s brother did not testify at trial.
The trial judge instructed the jury on the State’s burden of proof and on reasonable doubt. He also charged that “[e]ven within the testimony of a single witness, if you believe that a witness testified to you falsely *1066 on any material point, then you may within your province as a juror disregard all of that witness’ testimony or you may accept the part that you believe and disregard the part that you find to be false.” R. 82-83.
Under the facts of this case, the testimony of the arresting officer did not conflict with the appellant’s own testimony. See Benford v. State, 435 So.2d 1327, 1336 (Ala.Cr.App.1981) (,cWe are not persuaded that the conviction of defendant was dependent upon the testimony of Dumas. We think we have quoted enough of the testimony of defendant to show that even under his own testimony a jury issue was presented as to his guilt of each of the three kinds of homicide, murder, manslaughter, and criminally negligent homicide.”). It took the jury only 20 minutes to return a verdict of guilty.
For these reasons the judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.

. Rule 21.1, A.R.Crim.P., provides in part:
"At the close of the evidence or at such other time during the trial as the court reasonably directs, either party may file and, in such event, shall serve on the opposing party, written requests that the court instruct the jury on the law as set forth in those requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed.” (Emphasis added.)

. "[T]he test to be used in DUI cases is to look at all of the surrounding circumstances to see if there is sufficient evidence to support the conclusion that the defendant was in ‘actual physical control' of the vehicle.” Cagle v. City of Gadsden, 495 So.2d 1144, 1147 (Ala.1986).