The appellant, Jamaal Freeman, was convicted of robbery in the first degree and attempted murder. He was sentenced to 21 years' imprisonment for each conviction, the sentences to run concurrently.
 I.
The appellant contends that the trial court erred to reversal in refusing to give his written requested jury charge no. 5, the so-called "single-witness" charge, which provided:
 "The court charges the jury, if a conviction in case numbers CC-95-5082 and CC-95-5083 depends upon the testimony of the single witness, James Lee Kingery, and if the jury has a reasonable doubt as to the truthfulness of the testimony of said witness, you cannot convict the defendant Freeman and your verdict should be one of not guilty."
(C. 15.) The appellant maintains that his requested charge was appropriate because, he says, the testimony given by James Kingery constituted the sole identification evidence against him and without it the state's evidence would have been insufficient to support his conviction.
The trial court's refusal to give the appellant's requested charge was not error. This was not a case where the appellant's convictions rested solely upon the testimony of a single witness. While Kingery, the victim, was the only witness who gave "eyewitness" testimony concerning the actual robbery and the actual attempted murder, [1] other witnesses gave testimony placing the appellant near the scene of the offense around the time of its occurrence. Officer Burke Swearingen of the Homewood Police Department testified that he observed a blue car matching Kingery's description of the vehicle that the appellant was in (Kingery telephoned "911" and reported the incident almost immediately) pull into the parking lot of a Super 8 Motel approximately a quarter of a mile from the crime scene within minutes of the offense. Swearingen testified that by the time he pulled his patrol car into the motel parking lot in pursuit, the blue car had been parked haphazardly in the lot and abandoned; the engine had been left running, the lights were on, and the doors had been left open. According to Swearingen, a motel guest standing in the parking lot yelled to him, "they ran that-a-way," and pointed to the motel's entrance. Donna Shook, a desk clerk at the Super 8 Motel, testified that she saw the appellant and another black male enter the motel and run down a hallway around the time Officer Swearingen saw the blue car enter the motel parking lot. Officer Kathy Henderson of the Homewood Police Department testified that she arrived at the Super 8 Motel around the same time as Officer Swearingen and took up a position at the motel's back exit. Shortly thereafter, she said, she apprehended the appellant and his codefendant, Ronald Roberson, as they left the motel through the back exit. Officer Henderson testified that the appellant and Roberson were sweating profusely when they were apprehended. She stated that Kingery was brought to the motel, where he positively identified the appellant as the man who had shot at him. Officer Henderson also identified a photograph she took after the incident (State's Exhibit No. 2) depicting three bullet holes in the driver's side of Kingery's car. She stated that one bullet had struck the left rear tire of Kingery's car, one bullet had struck the upper portion of the rear driver's-side door, and one bullet had struck the pillar post behind the driver's seat. In view of the photograph and the other testimony providing circumstantial evidence corroborative of Kingery's testimony, it would be incorrect to assert that the appellant's convictions depended solely on the testimony of a single witness. See Flanagan v. State, 533 So.2d 637
(Ala.Cr.App. 1987). *Page 809 
In Baxley v. State, 18 Ala.App. 277, 90 So. 434, cert. denied, 206 Ala. 698, 90 So. 925 (1921), the appellate court considered the following jury charge requested by the defendant and refused by the trial court: "If the state's evidence in this case consists in the statement of witnesses of the truth of which the jury have a reasonable doubt, then they cannot convict thereon, although they may not believe defendant's witnesses." 18 Ala.App. at 278, 90 So. 434. The court held:
 "In the cases where [the above charge] is held to be good and its refusal error, the state's case was dependent and predicated upon the testimony of one witness. Segars' Case, 86 Ala. 59, 5 South. 558 [(1889)]; McDaniels' Case, 162 Ala. 25, 50 South. 324 [(1909)]; Mills' Case, 1 Ala. App. 76, 55 South. 331 [(1911)]. In other cases where there were other witnesses and other testimony, as in the case at bar, the charge is held to be confusing and misleading. Price's Case, 10 Ala.App. 67, 65 South. 308 [(1914)]; Conner's Case, 10 Ala.App. 206, 65 South 309 [(1914)]; McConnell v. Adair, 147 Ala. 599, 41 South. 419 [(1906)]. In the case at bar there were several witnesses for the state who testified as to the facts of the killing and several witnesses for the defendant who testified as to the details of the homicide . . . . To say the least, the charge is misleading, under the facts in this case."
18 Ala.App. at 279, 90 So. 434. In light of the other evidence presented in the instant case, the "single-witness" charge requested by the appellant would have been misleading.
Additionally, this court had held that a defendant is not entitled to a "single-witness" charge in a case where there has been no evidence of the victim's bad reputation either generally or for truth and veracity. Adams v. State,587 So.2d 1265, 1269 (Ala.Cr.App. 1991). Here, there was no evidence showing that Kingery had a bad reputation either generally or for truth and veracity, and thus the appellant's requested charge was properly refused.
Furthermore, the record reflects that the trial court sufficiently charged the jury on the issue of witness credibility. The trial court's oral charge provided, in pertinent part:
 "Also in this case the issue of identification arose, and the law says that in a criminal case, the State must prove not only the essential elements of the offense, as I've defined, but also must prove beyond a reasonable doubt the identity of the defendant as the perpetrator of the alleged offenses. In evaluating the identification testimony of a witness, you may consider the credibility of the witnesses who testify, whether the witness had an adequate opportunity to observe the person in question at the time or times about which he testified, and the length of time the witness had to observe the person in question, the prevailing conditions at the time in terms of visibility or distance and those things, and whether the witness had known or observed the person at earlier times. You may also consider the circumstances surrounding the identification itself, including the manner in which the defendant was presented to the witness for identification and the length of time that elapsed between the incident in question and the next opportunity the witness had to observe the defendant.
 ". . . .
 "The law says that you are the sole and exclusive judges of the evidence presented in this case, which means that you determine how much weight or how sufficient the evidence may be. It also means that you are the judges of the credibility or believability of the witnesses who testified. In determining the weight and credibility of any witness's testimony, you may consider any interest, bias, prejudice, or anything which in your judgment would tend to keep a witness from telling the truth. The witness's appearance or demeanor can also be considered in determining what weight or credibility you give the testimony of a witness. If you determine that any witness has wilfully testified falsely to a material matter in this case, you may disregard all or any part of that witness's testimony."
(R. 245-49.) (Emphasis added.)
In Hudson v. State, 628 So.2d 1063 (Ala.Cr.App. 1993), this court upheld the denial *Page 810 
of a requested "single-witness" charge where the trial court instructed the jury on the state's burden of proof, reasonable doubt, and the jury's discretion to disregard the entire testimony of a witness if it disbelieved any part of that witness's testimony. In addition to giving the above-quoted instruction that jurors could disregard the entire testimony of a witness where they believed the witness has testified falsely, the trial court here instructed the jury on the state's burden of proof and had defined reasonable doubt for the jury. In light of Hudson, then, we find that the appellant's requested charge was substantially covered by the trial court's oral charge. "The refusal of a requested written instruction, although a correct statement of the law, shall not be cause for reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the court's oral charge or in other charges given at the request of the parties." Rule 21.1, Ala.R.Crim.P. "This principle applies even where `the actual language of the requested charge is not employed in the oral charge,' and even where the requested charge `may be preferred as a statement of the law over a given charge.'" Malphurs v. State,615 So.2d 1310, 1313 (Ala.Cr.App. 1993). Accordingly, we find no error in the trial court's refusal to give the appellant's requested jury charge no. 5.
 II.
The appellant contends that the trial court erred in denying his motion for a new trial based on the state's failure to produce, as part of pretrial discovery, statements that the appellant and his codefendant, Ronald Roberson, made to the police. The record reflects that the appellant's counsel did not file a written pretrial discovery request. However, the appellant argues that the statements in question should have been disclosed, even without a discovery request, because, he says, they contained exculpatory information. He contends that the state's failure to produce the statements violatedBrady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215 (1963). In denying the appellant's motion for a new trial, the trial court found that the statements were neither exculpatory nor material.
To prove a Brady violation, a defendant must show that "`(1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the issues at trial.'" Johnson v. State,612 So.2d 1288, 1293 (Ala. Cr.App. 1992), quoting Stano v.Dugger, 901 F.2d 898, 899 (11th Cir. 1990), cert. denied,Stano v. Singletary, 516 U.S. 1122, 116 S.Ct. 932,133 L.Ed.2d 859 (1996). See Smith v. State, 675 So.2d 100
(Ala.Cr.App. 1995). "`The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'"Johnson, 612 So.2d at 1293, quoting United Statesv. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383,87 L.Ed.2d 481 (1985).
The evidence at issue here was three statements given to police by Roberson after he was arrested and one statement that the appellant gave to police following his arrest. The statements were recorded on audiotape. None of the statements was introduced at trial.[2] The appellant maintains that the defense was not aware of the existence of the statements until after his trial.
The record reflects that although the appellant did not file a discovery request in this case, the state exercised an open-file policy before trial, allowing the appellant's counsel to review the prosecutor's file on the case. That file contained references to Roberson's statements to police; however, the appellant's counsel did not seek access to the statements. As for the appellant's statement to police, the appellant's counsel could have discovered from the appellant himself the fact that the appellant had given a statement. Thus, the appellant could have obtained all of the evidence in question by exercising due diligence. "There is noBrady violation *Page 811 
where the information in question could have been obtained by the defense through its own efforts." Johnson,612 So.2d at 1294; see also Jackson v. State,674 So.2d 1318 (Ala.Cr. App. 1993), aff'd. in part and rev'd in part on other grounds, 674 So.2d 1365 (Ala. 1995). "`Evidence is not "suppressed" if the defendant either knew . . . or should have known . . . of the essential facts permitting him to take advantage of any exculpatory evidence.' United States v.LeRoy, 687 F.2d 610, 618 (2d Cir. 1982)[, cert. denied,459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983)]." Carr v.State, 505 So.2d 1294, 1297 (Ala.Cr. App. 1987) (noting, "The statement the appellant contends was suppressed in this case was his own, and no reason was set forth to explain why he should not have been aware of it"). Where there is no suppression of evidence, there is no Brady violation.Carr, 505 So.2d at 1297.
Even if we were to find that the appellant could not have obtained the evidence in question by the exercise of due diligence, we would still find no Brady violation. We agree with the trial court that the statements were neither exculpatory nor material. The appellant contends that if he had been aware of Roberson's statements before trial, he could have better presented his defense of misidentification by the victim, James Kingery. Kingery testified that the man who got out of the blue car and demanded his money at gunpoint was wearing a white T-shirt. The appellant argues that Roberson indicated in his statements that, in addition to seeing the appellant and someone named Camara Blue in the blue car shortly before the robbery, he saw a "third person" in the car. This person was, according to Roberson, wearing a white T-shirt. Roberson claimed in his statements that he was not in the blue car with the appellant, Blue, and the "third person" in the white T-shirt when, presumably, they committed the robbery. He claimed that he remained in his own car at a nearby service station and that he heard gunshots being fired shortly after the other men had driven away. He stated that he got in the blue car when the others returned to the service station a short time later. The appellant contends that Roberson's statements concerning the existence of the "third person" in a white T-shirt could have been used in his defense at trial to create doubt about the accuracy of Kingery's identification of the appellant as the gunman in the white T-shirt.
We are unpersuaded by the appellant's argument concerning the alleged exculpatory value of the information. First, the record reflects that Kingery testified that there were at least two individuals, maybe three, in the blue car the gunman got out of. Thus, the accuracy of Kingery's recollection of events would not have been undermined merely by the introduction of other evidence (from Roberson's statements) suggesting that at least two other individuals were in the blue car with the appellant. More importantly, Kingery testified that he got a clear look at the gunman's face during the incident, he identified the gunman by his face and not by his clothing, and he was positive the gunman was the appellant. What is more, the evidence at trial established that the appellant was, in fact, wearing a white T-shirt with an artistic design on the front when he was arrested. Roberson himself indicated in his statements that the appellant was wearing a white T-shirt, under a dark sweatshirt, on the night of the offense. Roberson's statements tended to exculpate onlyRoberson from participation in the robbery and could not be characterized as exculpatory of the appellant. In his statements, Roberson made no claim that the appellant had not been involved in the robbery, and Roberson clearly placed the appellant in the blue car with the others shortly before the offense.
We are further unpersuaded by the appellant's argument that his own statement to police, in which he denied participating in the offense, had special exculpatory value and would have been admissible at trial, over a hearsay objection, as a prior consistent statement under Rule 801(d)(1)(B), Ala.R.Evid., to rebut the inference, which the appellant says was created by the state during its cross-examination of the appellant, that the appellant had recently fabricated an alibi. Rule 801(d)(1)(B) permits the introduction of a witness's prior consistent statements if the declarant testified *Page 812 
at trial subject to cross-examination and his prior consistent statements are offered to rebut an express or implied charge of recent fabrication. However, to circumvent a hearsay objection and to obtain admissibility under Rule 801(d)(1)(B), the prior consistent statements must have been made before the witness is claimed to have acquired a motive to fabricate. See United States v. Patterson,23 F.3d 1239 (7th Cir.), cert. denied, 513 U.S. 1007, 115 S.Ct. 527,130 L.Ed.2d 431 (1994) (discussing Rule 801(d)(1)(B) of the Federal Rules of Evidence), cited in C. Gamble, Gamble'sAlabama Rules of Evidence: A Trial Manual for Making andAnswering Objections, § 801(d)(1) at 244-45 n. 13 (1995). See also Tome v. United States, 513 U.S. 150,115 S.Ct. 696, 130 L.Ed.2d 574 (1995). The appellant, who had been arrested as a suspect in robbery, clearly had a motive to fabricate at the time he made his statement to police. Thus, his statement would not have been admissible under Rule 801(d)(1)(B) for the purpose he asserts.
We find that disclosure of the statements by Roberson and the appellant would not have created a reasonable probability that the result of the appellant's trial would have been different. See Johnson, 612 So.2d at 1293. At trial, the appellant's attorney was able to thoroughly cross-examine Kingery concerning any potential misidentification of the appellant as the gunman. Kingery was unwavering in his testimony identifying the appellant. Additionally, the appellant testified at trial and was able to fully present an alibi defense. The appellant has not shown that the evidence in question was exculpatory or material. Therefore, the trial court correctly ruled that there was no Brady
violation by the state.
 III.
The appellant contends that the trial court erred by denying his motion for a judgment of acquittal. He presents a specific argument with respect to each offense for which he was convicted.
As for his conviction of robbery in the first degree, the appellant argues that there was a material variance between the indictment and the evidence produced at trial because, he says, the indictment alleges that the appellant used or threatened the use of force against Kingery "in the course ofcommitting a theft of an undetermined amount of lawful currency" and Kingery testified that he sped away from the scene without giving any money to the appellant. Thus, the appellant says, the robbery was not completed because Kingery was not deprived of any property. This court rejected a similar claim in Gainey v. State, 647 So.2d 37 (Ala.Cr.App. 1994):
 "The appellant also contends that the state failed to prove that [the victim] was deprived of any property.
 "`"'The present robbery statutes, however, do not require a "taking" of property, Marvin v. State, 407 So.2d 576 (Ala.CrApp. 1981); Ala. Code §§ 13A-8-40 through 13A-8-44 (1975) (Commentary), so that not only is the value of the property immaterial, but also the indictment need not allege an actual theft to constitute the offense. The operative words of the current robbery statute are "in the course of committing a theft," which includes an attempted theft, Marvin v. State, supra, rather than the common law element of an actual "taking from the person."'"'
 "Acres v. State, 548 So.2d 459, 463
(Ala.Cr. App. 1987), quoting Seawright v. State, 479 So.2d 1362, 1367-68 (Ala.Cr.App. 1985). (Emphasis added in Acres.)"
647 So.2d at 38. The appellant's claim is without merit.
As for his conviction for attempted murder, the appellant argues that the evidence was insufficient to establish that it was he who fired the shots at Kingery or to establish that he had the specific intent to kill Kingery. We disagree. Kingery testified that as he sat in his car after completing a transaction at a bank's automatic teller machine, a blue car pulled up next to the driver's side of his car, and the appellant got out of the passenger side of the blue car. Kingery stated that the appellant approached him, pointed a gun at him, and demanded that he give him his money. He stated that *Page 813 
when he realized what was happening, he put his car into drive, ducked, and sped away. As he was driving away, Kingery said, someone began shooting, and three shots struck his car. He stated that when he next looked in his rearview mirror, he saw the appellant getting back into the blue car. Although the appellant makes much of the fact that Kingery ducked before the shots were fired and that Kingery did not actually see the appellant shoot, it is clear from Kingery's testimony that the interstice between the appellant's gunpoint demand for money and the gunshots was brief. The only person Kingery saw get out of the blue car was the appellant. The only person he saw pointing a gun at him was the appellant. The only person who demanded money from him was the appellant. The jury could reasonably infer that the person who fired the shots when Kingery did not comply with the appellant's demand was the appellant.
The appellant's specific intent to kill Kingery can be inferred from the appellant's use of the gun, from the fact that three shots were fired into Kingery's car, and from the fact that at least two of those gunshots narrowly missed Kingery. Intent, which is rarely shown by direct proof, can be inferred from the surrounding circumstances of the case. Paige v. State,494 So.2d 795, 796 (Ala.Cr.App. 1986).
 "`The intention may be inferred from the force or direction, or from the natural or contemplated result of the violence employed, from the weapon or implement used by the accused, from his threats or prior conduct towards the person assaulted, and generally from the extent and effect of the injury inflicted, or
from any deliberate action which is naturally attempted and usually results in danger to the life of another.'"
Bishop v. State, 482 So.2d 1322, 1326
(Ala.Cr. App. 1985), quoting Underhill on Criminal Evidence, § 540 (3d ed. 1923).
The trial court did not err in denying the appellant's motion for a judgment of acquittal.
 IV.
The appellant contends that his convictions should be reversed because, he says, the prosecutor made improper remarks during closing argument that prejudiced the appellant.
The prosecutor made the following remarks during his closing argument:
 "[Prosecutor]: It doesn't matter that he wasn't successful in killing him. That's why it's an attempt. And the Code even defines that as you intend to commit an act, you do an overt — you intend to commit a crime, you do an overt act in furtherance of it, but the crime is not completed, talking about the attempted murder. We're one step away and one fateful chance away from a capital murder case here, which is what this almost was."
(R. 231.) The appellant's counsel objected to the prosecutor's remarks, contending that the prosecutor's reference to capital murder was for the sole purpose of inflaming the jury. However, we find that the prosecutor's remarks constituted a legitimate inference from the evidence. See Hardy v. State,462 So.2d 1016 (Ala.Cr.App. 1984). If Kingery had been struck and killed by one of the bullets, the appellant could have faced a capital murder charge. The prosecutor's remarks were unlikely to mislead jurors about the actual charges against the appellant or the nature of the state's evidence.
To assess the prejudicial effect of a prosecutor's remarks, we must consider the remarks in context and assess their probable impact on the jury, Ivery v. State, 686 So.2d 495
(Ala.Cr.App. 1996); see United States v. Young,470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). "[S]tatements of counsel in argument to the jury must be viewed as having been made in the heat of debate, and such statements are usually valued by the jury at their true worth." Harris v.State, 539 So.2d 1117 (Ala.Cr.App. 1988). A prosecutor's remarks compel a reversal only if the remarks "`so infected the trial with unfairness as to make the resulting conviction a denial of due process.' Donnelly v. DeChristoforo,416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)."Ponder v. State, 688 So.2d 280, 286 (Ala.Cr.App. 1996), quoting Darden v. Wainwright, 477 U.S. 168, 181,106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986). We cannot *Page 814 
say that the prosecutor's remarks so infected the trial with unfairness that the appellant was denied due process.
The appellant also points to the following remarks, made by the prosecutor in the rebuttal phase of the state's closing, as grounds for reversal:
 "[Prosecutor]: Every day y'all get up and you go to work to make money to pay your taxes."
(R. 233-34.) The appellant's counsel objected to the remarks on the ground that they placed the jury in the position of the robbery victim. However, from the limited portion of closing arguments contained in the record on appeal, we simply cannot determine what the prosecutor intended by the remarks and, therefore, cannot put the remarks in any context.
 "`[S]ince the record does not contain the arguments of counsel in their entirety, we cannot know the context in which this statement was made.' Kitsos v. State, 574 So.2d 979, 983-84
(Ala.Cr.App. 1990).
 "`The appellate court must be able to ascertain with reasonable certainty what was said before improper argument may be the predicate for a reversal. The remarks in this case are too incomplete to warrant the conclusion that they prejudiced the defendant. "[I]f the argument was beyond the bounds of legal propriety the record does not sufficiently disclose what was said in its context for us to say the argument was improper."'
 "Bethune v. State, 542 So.2d 332, 334
(Ala. Cr.App. 1989) (citations omitted)."
Marty v. State, 656 So.2d 416, 422 (Ala.Cr. App. 1994). We cannot say that the prosecutor's remarks denied the appellant due process.
For the reasons set forth, the judgment of the trial court is affirmed.
AFFIRMED.
McMILLAN, COBB, BROWN, and BASCHAB, JJ., concur.
[1] Kingery testified that the appellant got out of the passenger side of a blue automobile, approached him as he sat in his automobile after completing a transaction at an automatic teller machine, pointed a gun at him, demanded that Kingery give him his money, and fired three shots into Kingery's car as Kingery drove away.
[2] Roberson did not testify at the appellant's trial, and the charges against him were later disposed of under the Youthful Offender Act.