Charles Wesley Elder pled guilty and was convicted of the capital murder-robbery of Mark Cozadd. Sentence was life imprisonment without parole.
 I
Elder argues that the trial court did not follow the proper procedure in accepting his guilty plea because the jury was selected by the agreement of both the prosecution and the defense.
Before the jury selection began, the trial judge determined that Elder was knowingly and voluntarily pleading guilty underBoykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274
(1969). In particular, the judge determined that Elder knew that if he pled guilty to the capital offense, the *Page 923 
penalty would be death or life imprisonment without parole.
The record shows that the jury venire was qualified and voir dired. Two of defense counsel's three challenges for cause were granted. After the jury was sworn, the following occurred outside the jury's presence:
 "MR. GREENE [Deputy District Attorney]: Your Honor, we wish to make known to the Court for the record that in the course of striking the jury, that counsel for the State and for the defense made recommendation to each other as to jurors they thought would be best suited to hear the issues of this case concerning the facts sufficient to warrant a plea bargain. Realizing that their duties are somewhat limited in this case, defense submitted their list and we compared lists and selected 14 names, 2 of those being agreed to be as alternates in this case. As I understand it, the State does agree that the people here selected are the people the State selected to be jurors in this case.
 "MR. MORRIS [Defense Counsel]: Your Honor, we would concur in what Mr. Greene has just stated and say that we also had input into the selection of the 12 jurors plus two alternates and that that list was submitted to our client who approved the list.
 "THE COURT: All right. Mr. Elder, is that correct? Are you satisfied with the juror selection?
"THE DEFENDANT: Yes, ma'am, I am."
The State then presented a prima facie case of Elder's guilt and the jury found him guilty "of the capital offense as charged in the indictment."
"The guilty plea shall have the effect of waiving all non-jurisdictional defects in the proceeding resulting in the conviction except the sufficiency of the evidence." Alabama Code 1975, § 13A-5-42.
With regard to a guilty plea in a capital case, the requirement of § 13A-5-42 that the accused's guilt be proved beyond a reasonable doubt to a jury is jurisdictional. Cox v. State,462 So.2d 1047, 1051 (Ala.Cr.App. 1985). A trial judge has no jurisdiction to accept a guilty plea in a capital case without empaneling a jury to try the question of guilt. Cox, supra. However, the manner of selecting a jury is a procedural and not a jurisdictional matter. See Haynes v. State, 424 So.2d 669,670-72 (Ala.Cr.App. 1982); 16A Am.Jur.2d Constitutional Law § 648 (1979). "Objection to the empaneling of the jury must be taken in the court below, . . . in order that the matter may be reviewable by this court." Hendley v. State, 200 Ala. 546, 547, 76 So. 904
(1917); Lehr v. State, 398 So.2d 791, 800 (Ala.Cr.App. 1981). "An accused cannot by his own voluntary conduct invite error and then seek to profit thereby." Aldridge v. State, 278 Ala. 470, 474,179 So.2d 51 (1965). By consenting to the proceedings in the trial court, the defendant is estopped to allege error. Hill v.State, 57 Ala. App. 437, 440, 329 So.2d 126, cert. denied,295 Ala. 406, 329 So.2d 132 (1976).
 II
Elder contends that he should have been allowed to withdraw his guilty plea because he did not have a full understanding of the law and its future consequences. He testified that one of his two appointed counsel informed him that "if the laws were ever changed on capital punishment so that a defendant could receive life instead of life without parole, that I could appeal back to the Court for a sentence reduction and have my time cut to life." He stated, "I was not told that the law would change, only that if it ever did, then I could appeal."
 "Q. All right. Was it your understanding that there was any specific period of time before you would be able to appeal for a sentence reduction?
 "A. Only that if the law changed on capital murders, sometimes the defendants could receive life, then I would be able to appeal."
* * * * * * *Page 924 
 "I would have not plead guilty if I would have known that the law — that I couldn't appeal for a sentence reduction."
* * * * * *
 "It was totally in my mind that one day I would be able to appeal if the law changed."
* * * * * *
 "Q. Did your attorneys at any time tell you that you would in fact be eligible for parole at some point in time if you plead guilty?
"A. Only if the law changed on capital murder.
 "Q. Did they tell you specifically that if you pleaded guilty to life without parole under capital murder that you would be eligible for parole?
"A. If the law changed.
"Q. I'm asking you specifically.
"A. No, they did not.
 "Q. Did they say that you would get parole if you pleaded this way?
"A. No. Only that there was a slim chance."
Elder was represented at trial by Attorneys Patrick Cheshire and Charles H. Morris, III. Both counsel withdrew after Elder filed his motion to withdraw his guilty plea and new counsel was appointed.
At the hearing on the motion to withdraw the guilty plea, the affidavits of Attorneys Cheshire and Morris were admitted into evidence. In his affidavit, Cheshire stated:
 "Mr. Elder asked was there any chance that he would be paroled if he took the life without parole. I told him that if the law was ever declared unconstitutional that he could then request or petition the court for a new hearing on his sentence. I further told him that if he went to the electric chair that there wasn't any hope for anything. I also told Mr. Elder that if he took the life sentence he would at least be alive if the law was indeed struck down at some point."
Attorney Morris's statement corroborates Cheshire's account:
 "Mr. Elder was told that if he chose to plead guilty and he was in fact sentenced to life without parole that he must assume that he would spend the entire remainder of his natural life in prison. He was told that under the present state of law there would be no possibility of release from prison. He asked about the effect of a possible change in the law. He was told that such a change was highly unlikely. He was told that there is always a `possibility' that a law may be successfully challenged in Court. However, he was again cautioned that his decision to plead guilty, if he chose to do so, would have to be based on the assumption that the law would never be changed and that he would spend the rest of his life in prison with no possibility of parole. Mr. Elder chose to enter a plea of guilty to capital murder with the understanding that the State of Alabama would recommend a sentence of life without parole."
At the conclusion of the hearing, the trial judge found that the evidence was insufficient to allow Elder to withdraw the plea and was "satisfied that . . . the Defendant did understand and did knowingly, willingly, and voluntarily enter a plea at that time." We agree.
"When the defendant is fully aware of the consequences of his plea, that plea must stand unless it was induced by threats, misrepresentations, or improper promises in the plea bargaining agreement." United States v. French, 719 F.2d 387, 390 (11th Cir. 1983), cert. denied, 466 U.S. 960, 104 S.Ct. 2174, 80 L.Ed.2d 557
(1984).
Defense counsel's misrepresentation of the parole eligibility date may constitute ineffective assistance of counsel rendering a guilty plea involuntary and warranting the withdrawal of the plea. Annot., 10 A.L.R.4th 8, § 33 (1981). However, in this case, counsel were not ineffective and the length of imprisonment was not misrepresented. Appointed counsel never assured Elder that his sentence would be reduced even if "the law changed on capital murder." Elder even admitted this. Cheshire only told Elder that "if the law was ever declared unconstitutional that he could *Page 925 
then request or petition the court for a new hearing on his sentence." Morris only told Elder there was always a possibility that a law may be successfully challenged in court. There were simply no promises made that Elder would be paroled or that his sentence would be reduced. See 10 A.L.R. 4th 8, § 33 (b). Counsel representations were not misleading. While it is true that under existing law defendants sentenced to life without parole cannot be paroled, no one can predict or state "that Alabama law will never be changed by the legislature or by the state or federal judiciary to permit appellant to be paroled. * * [N]either I nor any other mortal can foretell the future, especially when that future will be controlled by legislatures and courts." Ex parteRutledge, 482 So.2d 1262, 1267-68 (Ala. 1984) (Maddox, J., dissenting).
Our review of the record convinces us that Elder clearly and fully understood the nature of the anticipated sentence of life without parole when he pled guilty. The fact that he may have subsequently decided that such a sentence was going to be actually longer than he originally thought does not affect the voluntariness of his guilty plea.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.