The appellant, Robert Frank Goodwin, was indicted for robbery in the first degree. Section 13A-8-41, Code of Alabama 1975. A jury convicted Goodwin of first degree robbery as charged in the indictment, and he was sentenced to 20 years in prison.
Goodwin was tried with his codefendant, Hilton Douglas Jenkins, Sr. The record shows that on July 15, 1991, Steve Ulmer and Ken Shook went to Turkey Creek in Jefferson County to go swimming. Ulmer testified that they had taken along lunch, a 12-pack of beer, and a portable radio with a dual cassette tape deck and CD player. Goodwin and his codefendant, Jenkins, also were at the creek. When Ulmer and Shook started to leave Turkey Creek, Jenkins told Ulmer that he had purchased the radio for $40 and he had paid Shook. Shook denied having received any money from Jenkins. Ulmer testified that Jenkins then said he wanted either his $40 or the radio. When Ulmer said he did not have the $40 and that the radio was his, Jenkins told Ulmer that Ulmer was not going to leave with the radio. At that point, Ulmer said, Goodwin walked up with what appeared to be a revolver in his hand. Either Jenkins or Goodwin then asked, "Is your life worth $40?" Ulmer testified that he felt threatened with bodily harm. Ulmer put the radio down, and he and Shook left, going directly to the Jefferson County Sheriff's Department to report the robbery. A sheriff's deputy testified that deputies went to Turkey Creek and found Goodwin sitting on a rock with a partially unzipped backpack under his leg. Goodwin was arrested, and a subsequent search of the backpack revealed a loaded .38 caliber pistol.
 I
Goodwin contends that the trial court erred in allowing the prosecution to present evidence of his alleged prior bad acts. On redirect examination of the sheriff's deputy who arrested Goodwin, the prosecutor asked how many times the deputy had arrested Goodwin since he had arrested him in this case. The deputy responded, "I think I arrested him one other time — " before Goodwin's counsel objected. The trial court sustained the objection. However, Goodwin failed to move to strike the deputy's testimony or to request a curative instruction to the *Page 1291 
jury. Therefore, this issue was not preserved for appellate review. Byrd v. State, 588 So.2d 929, 933-34 (Ala.Crim.App. 1991); Reeves v. State, 456 So.2d 1156 (Ala.Crim.App. 1984).
The appellant also argues that one of the State's exhibits, which consisted of a standard police form and a photograph Goodwin, was improperly received into evidence. According to the record, the following exchange took place during the prosecution's cross-examination of Jerry Galloway, a deputy with the Jefferson County Sheriff's Department:
 "[PROSECUTOR]: I want to ask you a few questions and I am going to be very specific with my questions, I want you to be very specific with your answers. I am going to show you this exhibit marked for identification as State's Exhibit Number 5. Now, have you ever seen a form like this before?
"[WITNESS]: Yes, sir, I have.
 "[PROSECUTOR]: For the record it has got a photograph on it, does it not?
"[WITNESS]: Yes, sir.
 "[PROSECUTOR]: Do these forms or items that you commonly deal with have a photograph on them when you deal with them?
"[WITNESS]: Yes, sir.
 "[PROSECUTOR]: On that form with the photograph is there a name listed of the person whose photograph appears?
"[WITNESS]: Yes, sir.
 "[APPELLANT'S TRIAL COUNSEL]: We would object to that, Your Honor.
"THE COURT: Overrule.
 "[PROSECUTOR]: What is the name of the person as listed on the exhibit?
 "[CODEFENDANT'S TRIAL COUNSEL]: Your Honor, we object to that, that exhibit is not in evidence, Your Honor.
 "THE COURT: Well, it may be such that the — overruled.
 "[APPELLANT'S TRIAL COUNSEL]: Judge, talking about hearsay stuff.
"THE COURT: You can correct it, John.
 "[APPELLANT'S TRIAL COUNSEL]: Okay. We would note an objection to it.
"THE COURT: Let me ask you something."
At that time, the court held an off-the-record discussion.
In his brief, Goodwin contends that he objected to the exhibit, and that that objection was overruled. From the record, however, it appears that he first objected to the question regarding whether there was a name listed for the person whose photograph appeared on the form and not to the form and photograph themselves. He then made an objection based on hearsay. Nowhere does the record show that Goodwin objected on the grounds that the form and photograph suggested prior specific bad acts on Goodwin's part. The relevancy of the photograph was discussed again later during the trial; however, there was still no objection on the ground that the photograph suggested prior specific bad acts. The first time Goodwin raises this argument is on appeal. "Objections must be stated with 'sufficient particularity' to apprise the trial court of 'the basis for the objection' so as to permit the trial court to make an informed decision 'on the particular legal issue involved.' " Rose v. State, 598 So.2d 1040, 1043
(Ala.Crim.App. 1992); Robinson v. State, 574 So.2d 910, 917-18
(Ala.Crim.App. 1990). "The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial." Exparte Frith, 526 So.2d 880, 882 (Ala. 1987). Therefore, this issue was not preserved for appellate review.
 II
Goodwin next contends that the jury's verdicts in this case — finding Goodwin guilty of robbery in the first degree and finding Jenkins guilty of robbery in the second degree — were inconsistent, requiring a reversal of Goodwin's conviction.
Both Goodwin and Jenkins were indicted on charges of first degree robbery. The trial judge instructed the jury on first degree robbery, as well as on the lesser included offenses of robbery in the second degree and robbery in the third degree. The trial court told the jury that lesser included offenses could be considered as alternative means to *Page 1292 
convict someone who was less culpable, less blameworthy, or less accountable. The jury also was instructed on the law of complicity. No objection was made on the record to these jury instructions.
Robbery in the first degree is defined in § 13A-8-41, Code of Alabama 1975:
 "(a) A person commits the crime of robbery in the first degree if [in the course of committing the crime of robbery in the third degree], he:
 "(1) Is armed with a deadly weapon or dangerous instrument; . . .
". . . .
 "(b) Possession then and there of an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument, or any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence under subsection (a) of this section that he was so armed."
A person commits the crime of robbery in the second degree if he commits the crime of robbery in the third degree and is aided in the commission of that crime by another person actually present. Section 13A-8-42, Code of Alabama 1975.
Our research reveals no Alabama cases addressing the issue of whether inconsistent verdicts between codefendants who are tried together requires reversal. However, the United States Court of Appeals for the Eleventh Circuit, ruling in an Alabama case, held, "With respect to any possible inconsistency in the jury's verdict, the law is clear: '[i]nconsistency in a verdict . . . is not a sufficient reason to set it aside,' " provided there is ample evidence to support the jury's conclusions.United States v. Alexander, 850 F.2d 1500, 1505-06 (11th Cir. 1988), (quoting United States v. Alvarez, 755 F.2d 830, 852
(11th Cir.), cert. denied, 474 U.S. 905, 106 S.Ct. 274,88 L.Ed.2d 235 (1985), 482 U.S. 908, 107 S.Ct. 2489,96 L.Ed.2d 380 (1987). See also, United States v. Dempewolf,817 F.2d 1318, 1323 (8th Cir. 1987), (inconsistent jury verdicts as to codefendants are not grounds for reversal). "Juries are free to return inconsistent verdicts, for whatever reason, provided their convictions are supported by adequate evidence." UnitedStates v. Gordon, 780 F.2d 1165, 1176 (5th Cir. 1986); UnitedStates v. Merida, 765 F.2d 1205, 1220 (5th Cir. 1985).
In this case, the record shows that the jury heard evidence that Jenkins confronted Ulmer and told Ulmer he was not going to leave Turkey Creek with the radio. There is no evidence that Jenkins was armed. While Jenkins and Ulmer were talking, Goodwin walked up and stood next to Jenkins, holding what Ulmer believed to be a revolver. When either Jenkins or Goodwin asked, "Is your life worth $40?," Ulmer put the radio down. He testified that he felt threatened with bodily harm.
The jury apparently believed that Goodwin was armed during the robbery. Ulmer was standing his ground, arguing with Jenkins about the radio. It was not until Goodwin entered the confrontation, holding what Ulmer believed to be a gun, that Ulmer backed down and left the radio. Therefore, the jury could have reasonably believed that Goodwin threatened the imminent use of force with the intent to compel Ulmer to hand over the radio while either armed with a deadly weapon or holding something in a manner to lead Ulmer to believe he was so armed. The evidence supports Goodwin's conviction of first degree robbery.
The jury also apparently believed that Jenkins, who was unarmed, threatened the imminent use of force to compel the victim to give up the radio and that he was aided in the theft by Goodwin, who was present. But the jury also apparently believed that Jenkins was not armed and that he was, therefore, less culpable than Goodwin. The evidence supports the jury's verdict convicting Jenkins of robbery in the second degree.
Without addressing the issue of whether the verdicts in this case were in fact inconsistent, we hold that, where the evidence supports the jury's conclusions, inconsistent verdicts as between codefendants who are tried together is insufficient to require reversal. *Page 1293 
 III
Goodwin maintains that the evidence in this case was insufficient to sustain a conviction for first degree robbery. Specifically, he argues that most testimony was to the effect that Goodwin did not have a gun at the time of the incident. A defense witness testified that Goodwin was holding a stick at the time. Therefore, Goodwin says, it is reasonable to infer Ulmer had mistaken the stick for a gun.
Robbery in the first degree requires proof that a person, in the course of committing a theft, threatens the imminent use of force with intent to compel acquiescence to the taking of the property, and while doing so is armed with a deadly weapon or a dangerous instrument or has something in his possession that the victim could reasonably believe is a deadly weapon or dangerous instrument, or makes any representation that he is armed. § 13A-8-41, Code of Alabama 1975.
The evidence in this case tended to show that as Ulmer and Shook were leaving Turkey Creek, Jenkins told Ulmer he was not leaving with the radio. Goodwin then walked up and stood next to Jenkins. Ulmer believed that Goodwin had a gun in his hand. Shook testified he saw something in Goodwin's hand that looked like the barrel of a gun. Either Goodwin or Jenkins then said, "Is your life worth $40?" Ulmer put the radio down, and he and Shook left.
Evidence that Ulmer was asked, "Is your life worth $40?" coupled with evidence that Ulmer believed Goodwin was holding a gun, is sufficient to support a conviction for first degree robbery. See Dinkins v. State, 584 So.2d 932 (Ala.Crim.App. 1991). Even if Ulmer and Shook were mistaken and Goodwin was indeed holding a stick, the deadly weapon or dangerous instrument element was proven. Id. "[T]o sustain a conviction of first degree robbery, the test to be applied is a 'subjective' one which focuses on the 'reaction of the victim to the threats of the robber.' " Breedlove v. State,482 So.2d 1277, 1281 (Ala.Crim.App. 1985) (citing State v. Hopson,122 Wis.2d 395, 362 N.W.2d 166, 169 (1984)). Here, the jury concluded that Ulmer and Shook believed that Goodwin was armed and for that reason, Ulmer felt threatened into leaving his radio with Goodwin and Jenkins. Thus, the State's evidence in this case was sufficient to support Goodwin's conviction for first degree robbery.
 IV
Goodwin contends that the prosecutor's alleged repeated misconduct deprived him of a fair trial. A review of the record, however, shows that Goodwin failed to object to the alleged prosecutorial misconduct. "In order to preserve an issue for appellate review, it must be presented by a timely and specific motion setting out the specific grounds in support thereof." Buice v. State, 574 So.2d 55, 57 (Ala.Crim.App. 1990); Wheeler v. State, 553 So.2d 652 (Ala.Crim.App. 1989). An issue raised for the first time on appeal is not properly before this court. Buice. Therefore, this issue has not been preserved for appellate review.
 V
Goodwin contends that the trial court erred by admitting into evidence the .38 caliber pistol found in a backpack in Goodwin's possession when sheriff's deputies arrived at the scene of the robbery. Goodwin argues that the backpack and gun belonged to his wife, who had brought both items with her when she came to Turkey Creek after the confrontation. Goodwin argues that because, he says, she did not give the deputies permission to search the backpack, the gun was obtained pursuant to an illegal search and seizure.
Following Goodwin's arrest, the deputies were authorized to search the backpack without a warrant or without consent. The United States Supreme Court has held "[t]here is ample justification for a search of the arrestee's person and the area 'within his immediate control' — construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." United States v. Morales,923 F.2d 621, 626 (8th Cir. 1991) quoting Chimel v. California,395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). In this case, the record shows that when the deputies *Page 1294 
arrested Goodwin, the partially opened backpack from which he could have pulled a weapon was underneath his knee. The backpack was clearly within his immediate control and could be searched without a warrant or consent.
Our appellate courts also upheld searches such as the one of Goodwin's backpack. "Such seizures have been consistently upheld when incident to a valid arrest and/or as a part of inventory procedures conducted prior to the arrestee's incarceration." Glasco v. State, 513 So.2d 54, 60-61
(Ala.Crim.App.), cert. denied, 513 So.2d 61 (Ala. 1987). According to the record, Ulmer and Shook left Turkey Creek and went to the Jefferson County Sheriff's Department, where Ulmer reported the robbery and gave a description of the appellant. Deputies were sent to the scene, where they made a legal arrest of the appellant. The subsequent search of the backpack, which was in the appellant's immediate control, revealed a loaded .38 caliber pistol. The search was valid either as a search incident to a valid arrest or as an inventory search. Therefore, we hold that the trial court did not err in admitting into evidence the .38 caliber pistol found in the backpack.
AFFIRMED.
All the Judges concur.