The appellant, Aaron Daniels, was convicted of attempted murder, see § 13A-6-2 and § 13A-4-2, Ala. Code 1975. He was sentenced to 15 years' imprisonment. That sentence was split and he was ordered to serve three years's imprisonment.
 I.
Daniels contends that the state failed to establish a prima facie case of attempted murder. Specifically, he argues that the state did not prove that he intended to kill his wife.
In deciding whether the state presented sufficient evidence to support a conviction, this Court must view the evidence in the light most favorable to the prosecution. Bayhi v. State,629 So.2d 782, 788 (Ala.Cr.App. 1993). We must accept as true evidence introduced by the prosecution, make all legitimate inferences from that evidence, and consider that evidence in the light most favorable to the prosecution. McKinney v. State,654 So.2d 95, 99 (Ala.Cr.App. 1995); Johnson v. State, 623 So.2d 444,447 (Ala.Cr.App. 1993). It is not the province of this Court to reweigh the evidence. Council v. State, 682 So.2d 495, 497
(Ala.Cr.App.), cert. denied, 682 So.2d 500 (Ala. 1996); Black v.State, 680 So.2d 942, 944 (Ala.Cr.App. 1995). "Conflicting evidence presents a jury issue." Curry v. State, 601 So.2d 157,159 (Ala.Cr.App. 1992). This Court will not substitute its judgment for that of the jury on the question of sufficiency of the evidence to sustain a conviction. Brandon v. State, 542 So.2d 1316,1319 (Ala.Cr.App. 1989).
"The question of a defendant's intent at the time of the commission of the crime is usually an issue for the jury to resolve." Rowell v. State, 570 So.2d at 850, citing Crowe v.State, 435 So.2d 1371, 1379 (Ala.Cr.App. 1983). Intent to kill may be inferred from the use of a deadly weapon. See Long v.State, 668 So.2d 56, 60 (Ala.Cr.App. 1995); Buskey v. State,650 So.2d 605, 609 (Ala.Cr.App. 1994). Intent *Page 866 
is rarely shown by direct proof, and may be inferred from the surrounding circumstances of the case. Paige v. State,494 So.2d 795, 796 (Ala.Cr.App. 1986). "[C]ircumstantial evidence is entitled to the same weight as direct evidence, provided it points to the guilt of the accused." Stephens v. State,580 So.2d 11, 24 (Ala.Cr.App. 1990), aff'd, 580 So.2d 26
(Ala.), cert. denied, 502 U.S. 859, 112 S.Ct. 176,116 L.Ed.2d 138 (1991). In Bishop v. State, 482 So.2d 1322 (Ala.Cr.App. 1985), this Court stated,
 "`The intention to do great bodily harm, to murder or commit any other crime by means of an assault, may be inferred from the circumstances. Circumstantial evidence is usually the only available evidence of intention aside from declarations of the accused. The intention may be inferred from the force or direction, or from the natural or contemplated result of the violence employed, from the weapon or implement used by the accused, from his threats or prior conduct towards the person assaulted, and generally from the extent and effect of the injury inflicted, or from any deliberate action which is naturally attempted and usually results in danger to the life of another.'"
482 So.2d at 1326, quoting Underhill on Criminal Evidence, § 540 (3d ed. 1923).
"The credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine."Zumbado v. State, 615 So.2d 1223, 1241 (Ala.Cr.App. 1993) (citations omitted).
Section 13A-6-2(a), Ala. Code 1975, states, in pertinent part, "A person commits the crime of murder if . . . [w]ith intent to cause the death of another person, he causes the death of that person or of another person." Section 13A-4-2(a), Ala. Code 1975, states, "A person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he does any overt act towards the commission of such offense."
The state's evidence established the following. Barbour County Deputy Ricky Dollar testified that on August 8, 1998, he was notified by the radio dispatcher that a shooting had occurred at Daniels's residence. He stated that, when he arrived, he saw Carrie Daniels, the victim, sitting on the steps of a mobile home with a towel on her head. Carrie Daniels had suffered extensive injuries to her face, shoulder, and arm as a result of a shooting. Dollar stated that Daniels was cooperative and that he showed Dollar his rifle, which was sitting on the hood of his car. Carrie Daniels was transported to the hospital. Barbour County Deputy Robert Patrick testified that he visited Carrie Daniels in the hospital on the evening that the incident occurred. He stated that she told him that she believed that Daniels had accidentally shot her, but that she was not sure the shooting was an accident. According!to Patrick, on the morning after the shooting occurred, Carrie Daniels provided a statement concerning the incident, which she signed. The statement, which was admitted into evidence, stated the following:
 "We was in the house. Aaron was drinking. I told him not to drink because it makes him crazy. He told me, `I am in my house.' The phone ring. It was my niece. She wanted me to pick her up from work. I told him (Aaron) that I was going to pick up my niece from work and I be right back. When I return Aaron was in the yard. He came over to me and said, `Carrie I know everything.' I said, `Aaron, what are you talking about?' He said the girl which is our daughters told me everything. He said that I have a man and I said, `Aaron, they are little kids; they don't know what they are talking about.' He said, `that's alright; I am going to take care of this right now.' And that's when he got the gun and aim it at me. I said, `Aaron why baby, why are you *Page 867 
pointing that gun at me?' Then my four-year-old ran out the house to me that's when I heard the gun go off. Last week on the 7/30/98 we had a argument about the light bill. I just started a job and I ask him to pay the light bill, which was $100. He came in the house and started arguing with me raising his voice. I was paying all the bills on the house so I ask him to help me. We argued some more. That's when he hit me with him hand closed (fist). I went to the doctor (Wesley Manier) office to have my ear checked out. He stated I lost the hearing in my ear from a hard force to my head."
(R. 93-94.)
Carrie Daniels testified that, although she recognized her signature on the statement, she did not remember making the statement. She stated that she was under the influence of medication when she gave the statement to Deputy Patrick. She further testified that she did not remember the events surrounding the shooting, and that she believed that the shooting was an accident.
In addition, Carrie Daniels also testified that several statements, she had given to police officers on several previous occasions concerning domestic violence and disputes between her and Daniels were untrue. For instance, she stated that on May 3, 1996, she told the police that Daniels had attempted to rape her and that she feared for her life. She testified that she had lied to the police on that occasion, because she believed her husband was being unfaithful. She further stated that on May 31, 1993, she told the police that she and Daniels had argued and that Daniels had pointed a pistol at her. Corp. Edgar Geisler of the Eufaula Police Department testified that he took a statement from Carrie Daniels concerning the May 31 incident, and that she told him that Daniels told her he was going to kill her. Carrie Daniels testified that her statement to Corp. Geisler was not true.
Daniels stipulated that he shot Carrie Daniels with a 12-gauge shotgun outside their residence. He testified that he was standing in the backyard with his rifle, trying to scare away dogs that had been going through their garbage cans. He stated that Carrie Daniels drove into their driveway, parked her car, and began walking toward him. According to Daniels, he told her that he was looking for the dogs, and then she began walking toward their mobile home. He stated that he walked behind her and put his hand on her shoulder, and that it startled her. He further stated that Carrie Daniels turned around and hit the gun he was holding, causing the gun to fire accidentally. He testified that the statements Carrie Daniels had made to police officers regarding prior violent acts were untrue.
Viewing the evidence in the light most favorable to the state, we find that the state established sufficient circumstantial evidence of attempted murder. Because the testimony indicated that Carrie Daniels was shot by a rifle, we may infer that he intended to kill Carrie Daniels. Moreover, Carrie Daniels's statement to Deputy Patrick that Daniels had accused her of cheating and then had pointed a rifle at her indicates that the shooting was intentional. Thus, the evidence was sufficient to establish that Daniels committed the overt act of shooting at Daniels with the intent to kill her.
 II.
Daniels maintains that the trial court erred in admitting into evidence police reports of prior violent encounters between him and Carrie Daniels. Specifically, he argues that the reports were irrelevant, that they were highly prejudicial, and that they were inadmissible hearsay.
We must address whether this issue was preserved for review. Our review of the record indicates that no police reports concerning prior violent acts were admitted *Page 868 
into evidence.[1] However, after Carrie Daniels indicated that she did not remember giving any statements to police officers, the prosecutor asked her to read the statements. Defense counsel stated the following objection:
 "Your Honor, I would object. That is a police report. It cannot be introduced and should not be used as a document."
(R. 82.) The trial court overruled the objection.
"`Objections must be stated with "sufficient particularity" to apprise the trial court of "the basis for the objection" so as to permit the trial court to make an informed decision "on the particular legal issue involved."'" Goodwin v. State, 641 So.2d 1289,1291 (Ala.Cr.App. 1994), quoting Rose v. State, 598 So.2d 1040,1043 (Ala.Cr.App. 1992). "`The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.'" Goodwin v. State, 641 So.2d at 1291, quoting Ex parteFrith, 526 So.2d 880, 882 (Ala. 1987). Because defense counsel did not specifically object on the basis that the admission of the records violated the rule against hearsay, and that the prior acts were irrelevant and prejudicial, Daniels's claims are not preserved for review.
 III.
Daniels maintains that his counsel was ineffective. Specifically, he argues that defense counsel failed to file a motion in limine so as to exclude testimony of prior bad acts and testimony by police officers, and that he failed to prepare an adequate defense.
Daniels has raised this contention for the first time on appeal. "[A]n ineffective-assistance-of-counsel claim must be presented in a new trial motion filed before the 30-day jurisdictional time limit set by Rule 24.1(b), Ala.R.Crim.P., expires, in order for that claim to be properly preserved for review upon direct appeal." Ex parte Ingram, 675 So.2d 863, 865
(Ala. 1996). Thus, this issue was not properly preserved for our review.
 IV.
Finally, Daniels's sentence of 15 years' imprisonment is not within the statutory range for the offense of which he was convicted. Daniels was convicted of attempted murder; attempted murder is a Class A felony. See § 13A-4-2(d)(1). The minimum sentence for "a Class A felony in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony" is not less than 20 years. § 13A-5-6(a)(4), Ala. Code 1975. The evidence indicated that a firearm was used in the commission of the felony; therefore, application of § 13A-5-6(a)(4) is mandatory. See Simmons v. State, 675 So.2d 79 (Ala.Cr.App. 1995);Clency v. State, 475 So.2d 642 (Ala.Cr.App. 1985). Because Daniels's sentence is not within the statutory range, we must remand this case with instructions that the trial court vacate Daniels's sentence and hold a new sentencing hearing. The trial court shall sentence Daniels in accordance with § 13A-5-6(a)(4) and this opinion. The trial court shall take all necessary action to ensure that the circuit clerk makes due return to this court at the earliest possible time and within 56 days of the release of this opinion. The return to remand shall include a new sentencing order and a transcript of the proceedings.
Daniels's conviction is affirmed, and the case is remanded for a new sentencing hearing. *Page 869 
AFFIRMED AS TO CONVICTION; REMANDED WITH INSTRUCTIONS AS TO SENTENCING.*
Long, P.J., and McMillan, Cobb, and Baschab, JJ., concur.
* Note from the reporter of decisions: On August 20, 1999, on return to remand, the Court of Criminal Appeals affirmed, without rehearing, without opinion.
[1] We note that the police report containing Carrie Daniels's statement concerning the shooting event was admitted into evidence as "Exhibit 10."
 *Page 235