COBB, Judge.
On September 15, 2003, James William Cobb entered a plea of guilty to felony driving under the influence of alcohol (“DUI”), a violation of § 32-5A-191(h), Ala.Code 1975. On November 20, 2003, Cobb was sentenced to 10 years’ imprisonment; that sentence was split, and he was ordered to serve 3 years in prison, followed by supervised probation.
Cobb raises three issues on appeal, all related to his guilty plea. He contends (1) that his plea was not entered knowingly and voluntarily because, he said, he did not understand that he was entering a blind plea, which would subject him to prison time if he was not accepted into a drug and alcohol program; (2) that his legal counsel was ineffective for not fully apprising him of his rights and of the consequences of his plea, namely, that he would have to serve prison time if he was not accepted into a drug and alcohol program; and (3) that the trial court erred by refusing to permit him to withdraw his guilty plea after it was learned that he was not eligible for a drug and alcohol program and would be sentenced to prison.
Cobb was indicted for two counts of felony DUI. (C. 10.) At the guilty-plea hearing on September 15, 2003, the State dismissed one count, and Cobb entered a plea of guilty to the remaining count. (R. 6.) When Cobb entered his guilty plea, he signed an “Explanation of Rights and Plea of Guilty” form, commonly referred to as an Ireland form,[1] reflecting that he had been informed of his rights, that he was familiar with his rights, and that he understood that he waived those rights by pleading guilty. The face of the form revealed that Cobb was being charged with a Class C felony and that the range of punishment for a Class C felony was from 1 year and 1 day to 10 years. (C. 17-18.) At the guilty-plea hearing, the following occurred:
“THE COURT:.... Subsection (h) [of § 32-5A-191] provides that on the fourth or subsequent conviction, a person convicted of violating this section shall be guilty of a Class C felony and punished by a fine of not less than $4,100 nor more than $10,000 and by imprisonment of not less than one year and one day nor more than ten years_ [The statute] also says minimum sentence shall include a term of imprisonment of at least one year and one day which may be suspended or probated, but only if the defendant enrolls and successfully completes a state certified chemical dependency program recommended by the court referral officer and approved by the sentencing court.
“Now, it’s a Class C felony that you will be pleading guilty to and I have told you the range of sentence within which the Court has to impose sentence.
“Do you understand the nature of the offense to which you are pleading?
“THE DEFENDANT: Yes, sir.
“THE COURT: Do you understand the range of sentence within which the Court will have to impose sentence as required by law?
“THE DEFENDANT: Yes.
“THE COURT: Now you have signed a document explaining all your rights. Have you read that?
“THE DEFENDANT: He—
“THE COURT: [Your attorney] read it to you?
“THE DEFENDANT: Yes.
*1046 “THE COURT: Do you understand your rights?
“THE DEFENDANT: Yes.
“THE COURT: Do you have any questions about your rights?
“THE DEFENDANT: No, sir.”
(R. 7-8.) The trial court went further and informed Cobb that he had a right to proceed to trial and explained the rights Cobb had if he chose to proceed to trial. Cobb acknowledged his understanding of these rights and his understanding that by pleading guilty he was waiving the right to proceed to trial. Cobb further acknowledged that he had not been coerced into entering a plea of guilty, after which the following occurred:
“THE COURT: Do you understand that you should not plead guilty unless you are guilty?
“THE DEFENDANT: (inaudible) can’t prove that I am.
“THE COURT: Well, do you understand, though, that you should not plead guilty unless you consider yourself guilty?
“THE DEFENDANT: Yes.
“THE COURT: All right, sir. How do you plead to felony DUI?
“THE DEFENDANT: Guilty.”
(R. 9-10.) After Cobb entered his guilty plea, the district attorney set forth his factual basis to support the DUI charge, and the trial court accepted Cobb’s guilty plea. (R. 11.) The district attorney also informed the trial court he had certified copies of three prior DUI convictions, which he was prepared to submit to support the felony charge, but Cobb admitted that he had nine prior DUI convictions. (R. 11-12.) After the trial court accepted Cobb’s guilty plea, the following occurred:
“THE COURT: Is a presentence investigation to be ordered?
“[DEFENSE COUNSEL]: Judge, we would waive that. Mr. Cobb is going to see the drug court personnel this afternoon to be referred to drug court and if he’s admitted he’s going to agree to participate in that, and review, if we can, his progress in November at sentencing day. And if he’s not admitted we’ll look at it at that time.”
(R. 12-13.)
The trial court set the sentencing hearing for November 20, 2003. At the beginning of the sentencing hearing, the following occurred:
“[DEFENSE COUNSEL]: Judge, we postponed sentencing on Mr. Cobb’s case, and we were — we had referred him to drug court. We felt like that he would qualify but as it turned out doing a background check he had an assault conviction from a number of years ago which is an automatic ban under federal law and that kept him out of drug court. We were not able to get him in the program because of the Violent Offender Act. That was our intent in deferring sentencing.
“[DISTRICT ATTORNEY]: Yes, sir, also in community corrections, but for whatever reason community corrections did not accept him either so here’s where we are.
“[DEFENSE COUNSEL]: Judge, Mr. Cobb is ready, willing and able to enroll in whatever treatment program that he can get in to.
“THE COURT: Let me say this ..., this is a blind plea and if the State doesn’t have a recommendation I’ll sentence him to the minimum sentence.”
(R. 17-18.) The district attorney informed the trial court he did not have a recommendation for sentencing. The trial court noted that it recalled Cobb had several prior DUI convictions. (R. 18.) Cobb informed the trial court that he was willing *1047 to attend alcohol or drug treatment; he conceded that he had received treatment in the past; and he admitted he had a drinking problem. (R. 20-22.) After further discussion about Cobb’s past alcohol and criminal history, the trial court sentenced him to a split sentence; he was to serve three years in prison, followed by seven years of supervised probation. The trial court also ordered Cobb to attend a treatment program for alcohol and drug dependency. The trial court explained that' the basis of the sentence imposed was so the court could monitor Cobb’s compliance with the terms of probation, because of his extensive history with alcohol abuse and with DUI charges.[2] (R. 28-34.) Immediately after the trial court pronounced sentence, the court asked Cobb if he had any questions.
“THE DEFENDANT: I went ahead and pled guilty under the' assumption that I would not have to do any prison time if I got into a program. I wasn’t guilty.
“THE COURT: Well, it is a little late to be telling the Court , that now. As I say, if you want to appeal it you can do that.
“THE DEFENDANT: I was parked in the front of my gate. I had not had any beer that day. I was on my way to the store to get some.
[[Image here]]
“[DEFENSE • COUNSEL]: Judge, for the record, I did find out but only this morning that he had been declined community corrections. Once he had been denied entrance into drug court I immediately requested that he be evaluated for community corrections, and I didn’t find that out until this morning.”
(R. 34-35.) The trial court refused to grant Cobb any relief and the sentence was imposed.[3]
On the same day as the sentencing hearing, November 20, 2003, Cobb’s attorney filed a motion to set aside the sentence and guilty plea. In this motion, Cobb’s attorney noted:
“1. That Defendant’s plea was not knowingly and voluntarily made.
“2. That the Defendant received ineffective assistance of counsel.
“3. That on the day Defendant entered said guilty plea, the Defendant was informed by the undersigned that the plea would be a blind plea.
“4. That Defendant did not have time to adequately discuss all consequences of entering a blind plea with counsel.
“5. That the undersigned did not adequately explain any and all potential consequences of entering, a blind plea to the Defendant.
“6. That on the day Defendant entered said plea, the Defendant indicated that he was not intoxicated but entered said plea in his best interest after being offered a referral to the Drug Court Program.
“7. That the undersigned failed to request a continuance to allow the Defendant to be evaluated for admittance into the Drug Court Program. Instead, the undersigned allowed the Defendant to enter a blind plea without knowledge of whether the Defendant would be ac *1048 cepted into the Drug Court Program or the Community Correction Program.
“8. That the Defendant continues to maintain his innocence.
“9. That due to said ineffective assistance of counsel, the Defendant’s sentence is manifestly unjust, and the interests of justice would be best served if the Defendant’s sentence is set aside.”
(C. 32-33.)
On December 4, 2003, the trial court granted Cobb’s request to set the guilty plea aside, but rescinded that order the following day and took the matter under advisement. (C. 1, 35.) On December 16, 2003, Cobb’s attorney filed an amended motion to set aside the sentence and to withdraw the guilty plea, adopting the pri- or pleading and attaching his affidavit. In addition to restating his concessions of ineffective assistance of counsel, Cobb’s counsel stated in his affidavit: “Prior to the entry of said guilty plea, I did not investigate the Defendant’s criminal history to determine if he had a prior conviction or pending charge that would preclude him from entering into the Drug Court Program.” (C. 36-38.) On January 6, 2004, a hearing was held on the pending motions, and on that same date, the trial court entered its final order, denying Cobb’s motions to set aside his guilty plea. (C. 2, 39.)
On January 7, 2004, Cobb’s attorney filed a motion to withdraw and requested the appointment of new counsel to represent Cobb. The trial court granted this motion, and on January 15, 2004, Cobb’s newly appointed counsel filed a motion to reconsider, raising the same arguments previously advanced by Cobb and attaching a copy of an affidavit from Cobb. (C. 40 41, 42-69.) Cobb filed a notice of appeal on January 20, 2004. (C. 184-85.) On February 3, 2004, the trial court entered an order, declaring Cobb’s motion to reconsider as “moot,” presumably because a notice of appeal had already been filed. (C. 2.)
In addressing whether the trial court erred by refusing to set aside a guilty plea, we have written:
“Once the trial court has properly accepted a defendant’s plea, the trial court has sole discretion in determining whether the defendant should be allowed to withdraw the plea. Moreover, any conflicting evidence is not subject to review on appeal unless it is shown that the trial court abused its discretion. Ex parte Heaton, 542 So.2d 931 (Ala.1989).”
Duncan v. State, 838 So.2d 1064, 1065 (Ala.Crim.App.2000).
Before accepting a guilty plea, a trial court is required to comply with the guidelines set forth in Rule 14.4(a) through (d), Ala.R.Crim.P. Our review of the record in this case reveals that the trial court did comply with these provisions. However, Rule 14.4(e), Ala.R.Crim.P., states: “The court shall allow withdrawal of a plea of guilty when necessary to correct a manifest injustice.”
It has been a rare occasion where this Court has seen fit to reverse the trial court’s refusal to set aside a guilty plea. For example, in Ex parte Blackmon, 734 So.2d 995 (Ala.1999), the defendant sought to have his guilty plea conviction set aside because, he alleged, that his guilty plea was entered with the understanding conveyed to him by his attorney that he would be1 sentenced to “time served” and would not have to serve any additional jail time. In Blackmon, the Alabama Supreme Court, citing authority from this Court, see Minor v. State, 627 So.2d 1071, 1072 (Ala.Crim.App.1992); Elder v. State, 494 So.2d 922, 924 (Ala.Crim.App.1986), noted that “a misrepresentation by a defendant’s counsel, if material, may render a guilty *1049 plea involuntary.” 734 So.2d at 997. The Supreme Court affirmed this Court’s judgment, affirming the trial court’s refusal to set aside the defendant’s guilty plea, observing that the evidence was conflicting. The defendant and his fiancée testified that the defendant’s attorney told them that the defendant would not serve any additional jail time if he pleaded guilty. The State offered the guilty-plea transcript, reflecting that the defendant acknowledged his understanding of the prison term he could receive if he pleaded guilty. The Supreme Court found it “significant” that the defendant did not call his attorney to testify or did not offer an affidavit from his attorney confirming that the misrepresentations had been made. Id. In making this observation of the material omission in evidence, the Supreme Court wrote:
“Other courts have found testimony verifying that counsel made the alleged misrepresentations sufficient to warrant withdrawing or setting aside a guilty plea. See Costello v. State, 260 So.2d 198, 201 (Fla.1972). Absent such testimony, we find Blackmon’s case to be similar to Colon v. State, 586 So.2d 1305 (Fla.Dist.Ct.App.1991), appeal after remand, 595 So.2d 271 (Fla.Dist.Ct.App.1992), which held that, in the absence of testimony from the defendant’s trial counsel, a transcript of a plea colloquy was sufficient to refute the defendant’s claim that his counsel had promised he would receive a more lenient sentence.”
734 So.2d at 997.
Likewise, in Culver v. State, 549 So.2d 568, 571-72 (Ala.Crim.App.1989), we affirmed the trial court’s refusal to set aside the defendant’s guilty plea because the facts established that the defendant entered a plea of guilty based upon the “probability” that he would receive less time if he entered a guilty plea. We stated in Culver, 549 So.2d at 572:
“A claim of ineffective assistance of counsel requiring a reversal of a conviction requires proof (a) that the appellant’s counsel’s performance was deficient, by showing that counsel made errors so serious that counsel was not functioning, as the counsel guaranteed the appellant by the Sixth Amendment, and (b) that this deficient performance prejudiced the appellant by showing that counsel’s errors were so serious as to deprive the appellant of a fair trial, a trial whose result is reliable. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Dill v. State, 484 So.2d 491 (Ala.Cr.App.1986). In carrying the burden of establishing prejudice, the appellant must .show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceedings would have been different. Strickland v. Washington. When an appellant’s claim of ineffective assistance of counsel arises from alleged errors committed by counsel in the guilty plea process, the prejudice prong of the Strickland analysis is satisfied by the appellant’s establishing ‘that there is a reasonable probability that, but for counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial.’ Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).”
The present case is distinguishable from both Blackmon and Culver. In this case, Cobb’s attorney acknowledged in his pleadings and in his affidavit submitted to the trial court that the assistance he had provided to Cobb was ineffective. Cobb’s counsel set forth the misinformation he conveyed to Cobb and acknowledged his failure to investigate Cobb’s background to see if Cobb would qualify for the alcohol *1050 and drug programs, which seemed to be the deciding factor in determining whether Cobb would avoid jail time. The concessions of Cobb’s attorney, coupled with Cobb’s assertion of innocence and revelation to the trial court that he entered a guilty plea because he understood he would not receive jail time, established “that there is a reasonable probability that, but for counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial.” Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). See Pugh v. State, 729 So.2d 359, 360-61 (Ala.Crim.App.1998) (Pugh’s argument that his “ ‘guilty plea was involuntary by reason of ineffective assistance of counsel because his court appointed attorney had misinformed him that if he pleaded guilty he would be eligible for good time and wouldn’t have to do no more than (65) months,’ ” if true, could justify setting aside his guilty plea conviction.).
Because Cobb established that his counsel was ineffective and that but for the advice he received from his counsel he would not have pleaded guilty, we conclude that the trial court abused its discretion by denying Cobb’s request to withdraw his guilty plea. As a result, we reverse the judgment of the trial court and remand this case with directions that the trial court proceed in accordance herewith.
REVERSED AND REMANDED.
McMILLAN, PM., and BASCHAB, SHAW, and WISE, JJ., concur.

. See Ireland v. State, 47 Ala.App. 65, 250 So.2d 602 (1971).

. Apparently, the trial court’s decision that it needed to monitor Cobb was the impetus for the trial court changing its initial plan to sentence Cobb to the minimum sentence (1 year and 1 day) and to subsequently impose the harsher 10-year split sentence.

. The trial court entered a sentencing order, but the sentencing order is dated November 19, 2003, the day before the hearing. (C. 30-31.) Cobb filed a motion requesting the date to be corrected. (C. 70.) It appears that the incorrect date was merely a clerical error.