JOINER, Judge.
Kinard Julius Henson appeals his guilty-plea convictions and subsequent sentences for attempted murder, a violation of § 13A-4-2, Ala.Code 1975, and bribing a witness, a violation of § 13A-10-121, Ala. Code 1975.[1] Henson was sentenced to 15 years’ imprisonment on each charge, the sentences to run concurrently with the other, as well as with any other sentence. Henson now appeals, arguing that his pleas were not voluntary and, further, that both of his sentences fall outside the statutorily prescribed sentencing range. For the reasons explained below, we affirm in part, reverse in part, and remand with instructions.
On August 23, 2010, pursuant to a plea agreement, Henson entered guilty pleas to the charges of attempted murder and bribing a witness.[2] (C. 28.) During his plea colloquy, the Court advised Henson that attempted murder, a Class A felony, “carries a penalty of between ten years and ninety-nine years or life.” The court also advised Henson that his second charge, bribing a witness, a Class C felony, “carries a penalty between ... one and ten [years].” Finally, before accepting Henson’s guilty pleas, the court inquired whether Henson’s pleas were the result of threats or force, and Henson indicated that they were not. (R. 4-5.)
Following Henson’s admission of guilt, the State proffered an account of the evidence against Henson. According to the State, Henson used his cousin Roderick Sykes to shoot and attempt to kill Larry Barker, a straw buyer in a mortgage scheme in which Henson was involved and for which Henson was then being investigated by federal authorities.[3] (R. 5-7.) Although the trial court accepted Henson’s guilty pleas, adjudication was withheld so that Henson could first address federal charges in New Jersey on “money laundering, mail fraud[,] and intimidating a witness by attempted murder.” (R. 7-8.)
On October 26, 2010, two days before Henson’s sentencing date, Henson filed a “Motion to Set Aside Guilty Plea.” (C. 54-55.) In his motion, Henson argued that his “plea was a product of coercion and threat to [Henson] and [his] family.” Specifically, Henson alleged that “his father *1131 and mother’s life, as well as his wife’s life, [were] threatened[] if [Henson] did not accept the responsibility for the attempted murder.” (C. 54.) In a hearing on his motion, Henson testified that he “plead[ed] guilty because [his] family was threatened and [he] had to [plead guilty] to save [his] family.” (R. 17.) According to Henson, his family was threatened by Darrell Henry, the “originator” of the mortgage scheme in New Jersey and the individual who had put Henson in contact with Barker, the victim. Henson, however, testified only briefly before ending his testimony on the advice of his counsel.[4] (R. 21-24.)
Henson’s father, John Henson (hereinafter “John”), was the only other witness to testify at the hearing. He testified that he learned, through a series of telephone conversations with his son, that Henry was threatening Henson, John, and other members of Henson’s family; John’s testimony, however, largely consisted of his recollections of telephone conversations with Henson in which Henson relayed threats allegedly made by Henry. John also testified that he and his wife relocated to Alabama from New Jersey as a result of the threat posed by Henry. On cross-examination, however, John acknowledged that he had no firsthand knowledge of any threat posed by Henry. Specifically, John testified that his understanding of the threat posed by Henry was based solely on his conversations with Henson and, further, that Henry had never personally threatened John. (R. 39, 42.) John also testified that he was first apprised of the alleged threats in July 2008 (R. 48) but that he did not relocate to Alabama until June 2010. (R. 46.) Finally, John acknowledged that he had had a recent encounter with Henry at a bank in New Jersey that was neither frightening nor threatening. (R. 41-42.)
At the close of the hearing on Henson’s motion to set aside his guilty pleas, the State urged the court to deny Henson’s motion, arguing that the timing of the motion was suspect; specifically, the State noted that the cases against Henson’s two codefendants had been resolved and, thus, that the State could expect no further cooperation from either codefendant. (R. 62.) Henson argued, however, that there was no evidence indicating that Henson was aware of the status of the cases against his codefendants before he filed his motion. (R. 62.) At the conclusion of the hearing, the circuit court denied Henson’s motion, finding that Henson’s pleas had been “made freely, understandingly, knowingly, and voluntarily.” (R. 64.) The circuit court proceeded to sentence Henson, stating as follows:
“I’m going to sentence you now in accordance with the agreement that your attorney made with the State’s attorney and I’m going to sentence you on the attempted murder to fifteen years in prison. On the bribing a witness, I sentence you to fifteen years for that and I run them concurrent.”
(R. 66.)
Henson subsequently filed a “Renewed Motion to Set Aside Guilty Plea and For New Trial.” (C. 56.) In addition to “re-alleg[ing] and re-assert[ing] each and every allegation set forth in his original [m]otion,” Henson argued only that his “plea was involuntary” and that his “plea was made by coercion.” (C. 56.) The circuit court denied the motion. On appeal, Henson argues that his guilty pleas were not voluntary and, further, that both his sen *1132 tences fall outside the permissible statutory range. We address each issue in turn.
I.
Rule 14.4(e), Ala. R.Crim. P., states that “[t]he court shall allow withdrawal of a plea of guilty when necessary to correct a manifest injustice.” “ ‘Whether a defendant should be allowed to withdraw a guilty plea is a matter within the discretion of the trial court, whose decision will not be disturbed on appeal absent a showing of abuse of that discretion.’ ” Johnson v. State, 886 So.2d 900, 902 (Ala.Crim.App.2008) (quoting Ex parte Blackmon, 734 So.2d 995, 997 (Ala.1999)). “‘Moreover, any conflicting evidence is not subject to review on appeal unless it is shown that the trial court abused its discretion. Ex parte Heaton, 542 So.2d 981 (Ala.1989).’ ” Cobb v. State, 895 So.2d 1044, 1048 (Ala.Crim.App.2004) (quoting Duncan v. State, 838 So.2d 1064, 1065 (Ala.Crim.App.2000)).
The voluntariness of a guilty plea •will not be addressed by an appellate court absent a showing that the trial court was first given the opportunity to address the specific issue. See Ex parte Parks, 892 So.2d 372, 374 (Ala.2004) (explaining that the prerequisites to appeal a claim that a guilty plea was involuntary are that “ ‘the defendant ... either (1) make a motion before the trial court to withdraw the guilty plea or (2) file a Rule 32 petition before the trial court. Through either avenue, the trial court must be given the opportunity to address this issue.’ ” (quoting Stinson v. State, 669 So.2d 1010, 1011 (Ala.1995))); see also Ginn v. State, 894 So.2d 793, 795 (Ala.Crim.App.2004) (noting, with respect to an argument on appeal related to the voluntariness of a guilty plea, “[bjecause this specific claim was not first presented to the trial court, it is not properly before this Court for review”). “It has been a rare occasion where this Court has seen fit to reverse the trial court’s refusal to set aside a guilty plea.” Cobb, 895 So.2d at 1048.
A.
Henson first argues that his plea was not voluntary because, according to Henson, it was made only after he and members of his family were threatened by Henry; this argument was the basis of Henson’s motions before the trial court. Although Henson testified briefly at the hearing, the bulk of the evidence before the circuit court was the testimony of John Henson, Henson’s father. First, John’s testimony largely consisted of what Henson had told John about the alleged threat posed by Henry; as John acknowledged, however, John was never directly threatened by Henry. Second, although John testified that he and his wife had relocated to Alabama because of the alleged threat, it appears that the couple relocated to Alabama nearly two years after John claims he was first made aware of Henry’s threats; likewise, John testified to a recent encounter with Henry that was neither threatening nor frightening. Third, and finally, the timing of Henson’s motion raises concerns. Although Henson alleges that Henry posed a threat as early as July 2008, Henson did not raise the issue of coercion until two days before he was scheduled to be sentenced and, further, until after the cases against his codefen-dants had been resolved. After a review of the record, we cannot say that the circuit court abused its discretion when it denied Henson’s motions. Johnson, 886 So.2d at 902.
B.
Henson’s second argument is that his plea was not voluntary because, according to Henson, the circuit court failed to apprise him of the correct range of sen *1133 tencing before accepting his guilty plea. As noted by the State, however, this argument was not presented to the trial court in either of Henson’s motions and, thus, is not preserved for appellate review. Ginn, 894 So.2d at 795. Therefore, we do not address it.[5]
II.
Henson also argues that the trial court sentenced him outside the statutorily prescribed sentencing range on both charges. (Henson’s brief, p. 16; Henson’s reply brief, p. 1.) We agree.
Section ISA-5-6, Ala.Code 1975, the relevant portions of which are quoted below, prescribes the limitations on terms of imprisonment for felony sentences:
“(a) Sentences for felonies shall be for a definite term of imprisonment, which imprisonment includes hard labor, within the following limitations:
[[Image here]]
“(3) For a Class C felony, not more than 10 years or less than 1 year and 1 day.
“(4) For a Class A felony in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony, or a Class A felony criminal sex offense involving a child as defined in Section 15-20-21(5), not less than 20 years.”
As noted above in Henson’s plea colloquy, as well as the State’s proffer, Henson was sentenced to a 15-year term of imprisonment on his conviction for attempted murder in which a firearm was used. However,
“[Henson’s] sentence of 15 years’ imprisonment is not within the statutory range for the offense of which he was convicted. [Henson] was convicted of attempted murder; attempted murder is a Class A felony. See § 13A-4-2(d)(l). The minimum sentence for ‘a Class A felony in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony1 is not less than 20 years. § 13A-5-6(a)(4), Ala.Code 1975. The evidence indicated that a firearm was used in the commission of *1134 the felony; therefore, application of § 13A-5-6(a)(4) is mandatory.”
Daniels v. State, 762 So.2d 864, 868 (Ala.Crim.App.1999). As Henson unequivocally argues,[6] he must be sentenced to no less than a 20-year term of imprisonment for this offense.[7]
Furthermore, Henson was sentenced to 15 years’ imprisonment for bribing a witness, a class C felony. See § 13A-10-121, Ala.Code 1975. As the State concedes,[8] however, this sentence cannot stand because it is in excess of the sentence prescribed by § 13A-5-6(a)(3), Ala.Code 1975; Henson’s sentence for this conviction cannot be greater than 10 years.
Because Henson’s sentences are not within the statutorily prescribed range, we reverse the circuit court’s sentencing order and remand this case with instructions that the circuit court hold a new sentencing hearing. The circuit court shall sentence Henson for the attempted-murder conviction and the bribing-a-witness conviction in accordance with § 13A-5-6(a)(3) and (4), respectively. The circuit court shall take all necessary action to ensure that the circuit clerk makes due return to this Court at the earliest possible time and within 56 days of the release of this opinion. The return to remand shall include a new sentencing order and a transcript of the proceedings.
Henson’s convictions are affirmed, and the case is remanded for a new sentencing hearing.
AFFIRMED AS TO CONVICTIONS; REVERSED AS TO SENTENCES; AND REMANDED WITH INSTRUCTIONS. 
WELCH, P.J., and WINDOM, KELLUM, and BURKE, JJ., concur.

. Both offenses were charged in an October 2008 indictment. (C. 2, 13.) Notably, the indictment indicates that a firearm was used in the attempted murder. (C. 24.)

. According to the plea agreement, Henson agreed to plead guilty to both offenses and the State would recommend "15 years to serve on attempted murder ... 5 suspended for 5 years on bribing a witness, both concurrent with one another and concurrent with Federal sentence[s].” (C. 28.)

.Henson agreed that the State’s account accurately portrayed the evidence. (R. 8.)

. The State does not argue that by failing to testify more fully Henson somehow waived his argument that his plea was involuntary.

. According to the State, "Henson argues that his conviction should be reversed because he was not instructed on a range of punishment that was not applied by the trial court. Such an argument is nonsensical on its face.” (State’s brief, p. 11.) As discussed in greater detail below, however, Henson faced a minimum 20-year sentence as a result of his guilty plea to attempted murder with the use of a firearm. § 13A-5-6(a)(4), Ala.Code 1975; Daniels v. State, 762 So.2d 864, 868 (Ala.Crim.App.1999). We recognize that the plea colloquy indicates that the trial court did not, in fact, apprise Henson of the accurate sentencing range for attempted murder while using a deadly weapon. See R. 4 ("THE COURT: Now, you are charged with attempted murder, which is a Class A felony. It carries a penalty of between ten years and ninety-nine years or life; do you understand that?"). We also recognize, as Henson argues on appeal, that this error may be a basis on which Henson may challenge the volun-tariness of his guilty plea. Durr v. State, 29 So.3d 922, 923-24 (Ala.Crim.App.2009); Brooks v. State, 854 So.2d 643, 644-45 (Ala.Crim.App.2003). Although the issue is not preserved for appellate review on direct appeal, whether Henson may raise the issue in a postconviction proceeding is another question. See Cantu v. State, 660 So.2d 1026, 1029 (Ala.1994) ("We hold that even though a defendant could file a motion under the provisions of Rule 14 to withdraw a plea of guilty and could appeal a trial court’s ruling on that motion, the defendant would not be precluded from raising, in a timely filed post-conviction proceeding, the question of the voluntariness of the guilty plea.”). See also Ex parte Parks, 892 So.2d at 374 (“Under either option, filing a motion to withdraw the guilty plea or filing a Rule 32, Ala. R.Crim. P., petition, the trial court is given the first opportunity to review the issue of voluntariness of the guilty plea.” (quotations omitted)).

. Henson’s reply brief, p. 2. The State acknowledges, without discussion, that it "recommended a sentence that was less than what [Henson] might have received had [Henson] gone on to trial.” (State’s brief, p. 12.)

. We recognize that the 20-year term of imprisonment that must now be imposed exceeds the sentence recommended by the State pursuant to the plea agreement; neither party, however, addresses the validity of a plea agreement that incorporates an illegal sentence, nor what effect the imposition of the correct sentence now has on the plea agreement. We recognize that when a defendant receives a sentence that is greater than envisioned in a plea agreement, the circuit court, upon a prompt motion, should permit a defendant to withdraw his guilty plea; such an argument relates to the voluntariness of a plea. Andrews v. State, 12 So.3d 728, 730-33 (Ala.Crim.App.2009). In note 5, supra, we identify the process for addressing the volun-tariness of a guilty plea in postconviction proceedings; although it would be judicially expedient to hold that Henson is entitled to withdraw his guilty plea because the circuit court will now impose a sentence greater than the sentence in his plea agreement, such a holding would conflate the concept of the voluntariness of a plea—which is nonjurisdic-tional and must be specifically raised—with an illegal sentence—which is jurisdictional and may be raised at any time. The illegal nature of Henson’s sentence for attempted murder with a deadly weapon was apparent on the face of the plea agreement, as well as when it was pronounced by the trial court; thus, Henson was on notice of the defect in his plea agreement and the defect in his plea colloquy and could have made specific arguments regarding the voluntariness of his plea before the trial court. Because Henson did not provide the trial court with an opportunity to address his arguments related to the voluntariness of his plea, we do not address those arguments on appeal.

. State’s brief, p. 5.